**In re Brian Don BRETTSCHNEIDER, Debtor.**

No. 04–15394–B.

United States Bankruptcy Court,
D. South Carolina.

Feb. 11, 2005.

Jason T. Moss, for debtor.

Richard J. Dolce, for Creditor Prime Financial.

Joy S. Goodwin, Columbia, SC, Chapter 13 Trustee.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY (11 U.S.C. § 362)

WM. THURMOND BISHOP, Bankruptcy Judge.

This matter comes before me for a scheduled hearing on the Motion for Relief from Stay (11 U.S.C. § 362). The record shows that this Motion for Relief from Stay, Certification of Facts, Hearing Notice and Certificate of Service were filed electronically on January 4, 2005 and served on the debtor, the debtor's counsel and the trustee by mail on that date. The record further reflects that the debtor, through counsel, filed an "Answer to Motion for Relief from Stay" electronically on January 11, 2005, and served the creditor, through its attorney, and the trustee, by mail on that date.

At the call of the case present before me were the debtor and his attorney, the trustee, and a representative of the creditor and the creditor's attorney.

### POSTURE OF THE CASE

The creditor, Prime Financial Services, through its counsel, filed this Motion for Relief from the Automatic Stay four days after the debtor filed his Petition for Relief under Chapter 13 of the Bankruptcy Code. In its Motion for Relief, the creditor essentially alleges that the debtor has entered into an executory land purchase contract with it, that at the time of the filing the contract was in default, and therefore that the property at issue is not property of the estate. In support of its position creditor cites *In re Jones*, 118 B.R. 395 (Bankr. D.S.C.1989).

The debtor contends that he intends to clear the arrearage through his Chapter 13 Plan and resume regular payments outside of the Plan, protecting the creditor. In the alternative, debtor argues that the agreement between the parties is an executory contract which may be cured and assumed.

Based on my review of the pleadings filed in this matter as identified hereinabove, as well as the testimony presented to me at the hearing in this case, I make the following Findings of Fact:

### FINDINGS OF FACT

1. I find and conclude that this court has subject matter jurisdiction over the issues raised in the parties' pleadings and personal jurisdiction over the parties to this matter.

2. I find that, on April 20, 2001, the debtor entered into a "Lease Agreement with Option to Purchase" (hereinafter "Agreement") between himself and "Donald R. Weaver/Prime Financial Services." The Agreement, which is ten pages long and contains 41 numbered paragraphs, identifies the premises leased as 137 Firebranch Street, Columbia, South Carolina. The debtor resided at the subject property on the date his Chapter 13 petition was filed.

3. I find that under the terms of the Agreement, the lease was for a term of 30 years, beginning on April 20, 2001, and ending on March 31, 2031. The Agreement specified that the debtor would make bi-weekly payments in the amount of

$416.02 beginning on the 20th day of April, 2001 and every two weeks thereafter throughout the term of the Agreement. The Agreement defines a default as "failure of the tenant to pay, when due, an installment of payments required by this Agreement." (This court notes that there are other grounds for default specified which do not appear to be relevant to this matter). Further, the Agreement specifies, "In the event of default as defined herein, and reserving all rights otherwise available to the jurisdiction of the Magistrate's Court for the appropriate county for the purpose of eviction, ejectment or other proceedings involving this Agreement." The Agreement also specifies, "Whenever any notice, demand, consent or approval shall or may be given hereunder to either of the parties by the other, such notice, demand, consent or approval shall be in writing and be sent by registered or certified mail, return receipt requested, with postage prepaid addressed as follows," thereafter specifying, for the debtor, the address of the property, and for the creditor, Prime Financial Services, P.O. Box 50799, Columbia, South Carolina 29250.

4. I find that the Agreement, in addition to the above provisions, contains an "Option to Purchase (Conditional Contract of Sale) (Fixed Rate Payment)." This portion of the Agreement (hereinafter identified as "Option to Purchase"), consists of Paragraphs 13 through 41 of the Agreement, and appear on Pages 3 through 10 of the Agreement.

5. I find that the Option to Purchase is conditioned on "buyer's faithful performance of the lease agreement as set forth hereinabove." The exercise of the option is available "throughout the term of the aforesaid lease agreement, and subject to faithful performance." The terms of the Option to Purchase specify a purchase price of $98,900.00, to be paid together with interest at the rate of 9.875%. It recites receipt of a $3,900.00 nonrefundable down payment, and as does the lease portion of the Agreement specifies bi-weekly payments in the amount of $381.02, plus an additional amount of $35.00 for taxes and insurance for each payment, to bring the payment total to the $416.02 specified in the lease portion of the Agreement. The Option to Purchase further specifies that the amount to be paid for taxes and insurance may increase in the future as taxes and insurance costs increase.

6. I find that the Option to Purchase further specifies, in Paragraph 22, Conditions of Default, which include "failure of buyer to comply with any term or condition set forth herein" and "failure of buyer to make any payment due hereunder on date due." The Option to Purchase portion of the Agreement provides that, "In event of default, Seller shall be entitled to immediate possession of the premises and Purchaser shall quietly surrender title and possession to the Seller. Seller shall have the right, at his option, to terminate Buyer's right in the property as granted by this contract. Seller shall have the right to declare all remaining purchase price due and payable immediately in cash, nonpayment of same tantamount to forfeiture of all rights under this contract."

7. I find that the Option to Purchase further provides that "Buyer shall be liable for the payment of any attorney's fees incurred by Seller due to the necessity to enforce any provisions of this contract, including but not limited to remedies in the event of default. Should Seller find it necessary to apply to Magistrate or any court of higher authority for relief under any provision of this contract, Buyer shall be liable to Seller for compensation to Seller for a fee for services of not less than

"$100.00." The Option to Purchase further provides that "Whenever any notice, demand, consent or approval shall or may be given hereunder to either of the parties by the other, each such notice, demand, consent or approval shall be in writing and sent by registered or certified mail, return receipt requested, with postage prepaid, addressed as follows," thereinafter stating the same addresses as were included in the lease portion of the Agreement. Further, under Paragraph 34 of the Option to Purchase (Termination), it states (in bold capital letters), "**BUYER AND SELLER AGREE THAT SHOULD BUYER BECOME IN DEFAULT, SELLER SHALL HAVE THE RIGHT TO FILE FOR EVICTION THROUGH THE APPROPRIATE MAGISTRATE COURT, AND THIS DISPUTE SHALL BE HANDLED UNDER THE LAWS OF LANDLORD AND TENANT UNLESS AT LEAST TWENTY PERCENT (20%) OF THE PRINCIPAL AMOUNT HAS BEEN PAID TO THE SELLER, EXCLUSIVE OF INTEREST EARNED.**"

8. Based on the testimony of Mr. Don Weaver, appearing on behalf of Prime Financial Services, I find that the provision above cited concerning the election to have any dispute handled under landlord/tenant law, unless at least 20 percent of the principal amount has been paid, is a provision placed in the contract to protect a lease/purchaser who had achieved equity in the contract. Mr. Weaver testified that it was the intent of Prime Financial Services that should the lease/purchaser achieve 20 percent equity in the property, any attempt to deprive the lessee/purchaser of possession of the property would have to be handled as a mortgage foreclosure proceeding rather than as a landlord/tenant matter.

9. Based on Mr. Weaver's testimony, I find that the debtor has not paid, exclusive of interest earned, 20 percent of the principal amount of the purchase price of $98,900.00.

10. Based on Mr. Weaver's responses to questions asked on cross-examination, I find that under the terms of the Agreement the debtor could sell the property, but that the sale had to be with Prime Financial Services' consent as Prime Financial Services still held title to the property.

11. Based on Mr. Weaver's responses to questions on cross-examination, I find that the debtor is entitled to the 4 percent home ownership rate on property taxes.

12. While a review of the Agreement shows two paragraphs concerning notices, a review of both of the sections on default contained in the Agreement show that neither requires a notice to be given in the event of default. Therefore, I find, as stated in the Agreement, that the lessee/purchaser is in default upon occurrence of any of the conditions listed for default.

13. I further find that on October 21, 2004, by certified mail, return receipt requested, Prime Financial Services notified the debtor that an eviction action had been filed against him in the Lexington County Magistrate's office. It set forth the current balance due, past-due balance of $3,168.04 for payments for August 1st, September 1st and October 1st, 2004, court costs and late fees. In addition, I find that a Rule to Vacate or Show Cause was filed with the Magistrate's Court on October 25, 2004.

14. I find that when a representative of the creditor appeared in the Magistrate's Court for hearing on the Rule to Vacate, she was advised that the debtor was filing for protection under the Bankruptcy Code.

*CONCLUSIONS OF LAW*

15. The analytical framework for determining the rights of parties arising

out of their agreements in a situation where recognition of those rights is being sought in bankruptcy proceedings, is to examine the contractual provisions to determine whether they provide, in the contract, for certain rights and interests. It is clear that the intent of the Agreement was that until 20 percent of the principal of the purchase price was paid, the Agreement would be treated under landlord/tenant laws, and thus would be treated as a lease rather than a mortgage. Mr. Weaver's undisputed testimony that the debtor had not paid 20 percent of the principal of the purchase price is supported by the debtor's Certification of Facts, wherein he stated that the remaining lien on the property was $93,686.00, and that he had no equity in the property. Further, while the debtor enjoyed some of the benefits of ownership, such as the lower property tax rate for a principal residence, the property continued to be titled in the creditor's name. It is therefore my conclusion that under the terms of the parties' Agreement, read in its totality, at the time when the debtor was given notice of the filing of the eviction action, and at this time, it is a land sales contract and is therefore an executory contract under the law of the State of South Carolina.

■ 16. The next issue is, then, whether or not the debtor was in default at the time the case was filed. In that regard, I must look at the certified letter sent to the debtor on October 21, 2004. That letter clearly sets forth the debtor's arrearages (default), and the creditor's intent to proceed with a remedy in the event of default (e.g., eviction in the Magistrate's Court). While the debtor's counsel emphasizes that there was no adjudication that the debtor was in default, the parties' Agreement does not require such an adjudication. Further, even though there is no specific requirement for a written declaration of default, it is clear that the creditor's October 21, 2004 letter is such a written declaration. It is therefore my conclusion that, as of October 21, 2004, the debtor was in default and that the creditor was exercising its right to terminate the contract and evict the debtor from the property.

■ 17. Therefore, as the Agreement between the parties at the time of filing is an executory contract; as the debtor, at the time of filing, is in default; and as the creditor's termination of the Agreement is evidenced by prepetition commencement of eviction proceedings, I conclude that the Agreement was terminated by the creditor prior to the debtor's filing of his Petition for Relief in bankruptcy on December 31, 2004, and that the subject property was therefore not property of the estate. Therefore, the debtor's interest in it was not protected by the automatic stay. However, to remove any cloud which may exist on this real property as a result of the debtor's filing the Petition for Relief, I order that any stay under Section 362(a) should be lifted for cause.

IT IS SO ORDERED!